WALTERS and another *v.* CRANDAL.

*(Circuit Court, N. D. New York.  December 13, 1881.)*

PATENTS FOR INVENTIONS—DIFFERENT MEANS.

In a patent for a buckle, where a particular method of pivoting the buckle to the tongue is made a peculiar feature of the original patent, and this is effected by a spring pressing against the lever, the structure cannot be altered on the reissue, and a device which effects the same purpose by different means is not an infringement of the reissued patent.

*A. v. Briesen,* for plaintiffs.

*G. W. Hey* and *C. H. Duell,* for defendant.

BLATCHFORD, C. J.   This suit is brought on reissued letters patent No. 8,829, granted to Robert Loercher July 29, 1879, for an "improvement in harness buckles;" the original patent, No. 47,574, having been granted to Cyrus W. Saladee, as inventor, May 27, 1865. The specification of the reissue, including what is inside of brackets and what is outside of brackets, omitting what is in italics, is as follows:

"Figure 1 is a plan [view, and] *view.* Figure 2 *is* a section, [of my improved buckle for harness, etc.,] *the red lines showing the strap to which the buckle is secured. I call my improved buckle a 'snap buckle,' for it is self-acting and lacks the ordinary 'long tongue.' My invention is more particularly applicable to the plate and rivet buckle described in my application, A,* and consists in pivoting the buckle [to the projecting end of a metallic plate carrying a loop, in combination with fastening pins; also, in a peculiar construction of buckle, as hereinafter more fully described,] *in a groove in the tongue, (or part that resembles the common tongue,) so that a spring shall make the front end of the tongue snap under the front bar of the buckle, which is provided with a short stud which passes through the strap to be held, and takes in a corresponding hole in the tongue.* In the drawings, A is the metallic buckle plate, provided with rivets, *a,* by which it is secured to the upper surface of the strap. B is the metallic loop for confining the loose end of the [other strap] *strap,* [which loop is rigid on the plate, A.] *The plate, A, rivets, a, and loop, B, are similar to the plate, rivets, and loop described in my application, A. E is the tongue, and is the* [The] front end *or continuation* of [the] plate, *A.* [A,] *It* is provided with a grooved recess, *e,* in its under side *about* one inch from the end, and in which the back bar of the buckle is pivoted. G is the buckle, its back bar, *o,* being provided with a short lever, *x,* and turning in the groove, *e.* The under side of the front bar of the buckle is provided with a short stud, *i,* which takes into a corresponding indentation, *v,* in the upper side of the [plate, A,] *tongue, E.* I is a flat steel spring, the front end of which is secured by a rivet to the front end of [Plate, A.] *tongue, E,* the rear end of said spring pressing [against the] *down up* lever, *x,* of the back bar of the buckle, so as to keep it in the groove, *e,* and at the same time force the front ends of the [plate, A, which is] tongue [shaped] and [the] buckle together, so as to make the stud, *i,* take into the hole, *v.* If preferred, the stud, *i,* may be put upon the tongue, [or plate, A,] instead of upon the buckle, and may take into a corresponding hole in the front bar of the buckle. In using my improved [buckle] *'snap buckle'* the strap to be held is placed between the front bar of the buckle and the tongue, and drawn as tightly as desired, the spring forcing the front bar down upon the strap so that the stud shall take into each hole of the strap as it arrives. The front side of stud, *i,* should be rounded off somewhat so as to allow the strap to slip over it when being tightened. There is a peculiar advantage possessed by this buckle. It is not necessary to slacken the strap in order to unbuckle it, as is the case with other buckles. I have only to lift up the front bar of the buckle about an eighth of an inch in order to lift the stud, *i,* out of the hole in the strap, which thus frees the strap. The importance of this advantage is self-evident."

Reading in the foregoing what is outside of brackets, including what is in italics and omitting what is inside of brackets, gives the specification of the original patent. The claims of the reissue are as follows:

"(1) The buckle, G, in combination with the plate, A, having the tongue extension, all substantially as shown and described. (2) The buckle frame pivoted to the tongue-extension portion of plate, A, all substantially as set

forth. (3) The buckle frame, G, provided with stud, i, in combination with the buckle tongue, A, having an indentation for the reception of said stud, substantially as specified. (4) The plate, A, provided with the loop and with fastening pins, in combination with the buckle frame, which is pivoted to said plate, substantially as set forth."

The claims of the original patent were these:

"(1) Constructing a buckle so as to be unbuckled without slackening the strap, in the manner described. (2) The buckle, G, in combination with the tongue, E. (3) Pivoting the buckle to the tongue in the manner described. (4) Forming the tongue, E, as a continuation of plate, A, in the manner described. (5) The stud, i, or its equivalent, operating as described, in combination with the indentation, v."

Only claim 4 of the reissue is alleged to have been infringed. The infringing structures are complainants' Exhibit No. 3, and defendant's Exhibit No. 4. The former is constructed in accordance with the description contained in letters patent No. 206,298, granted to the defendant July 23, 1878. It has a hollow case or shell, made of sheet metal, and provided at the bottom with a plate, which forms a part of the case or shell. Both ends of the case are open. There is a buckle at each end, and attached by a joint to a short piece of flat sheet metal, so as to project outwardly. Each of these two short pieces is of two thicknesses, the metal being bent to form the joint for the buckle, and is beneath and close up against the lower surface of the bottom plate. In order to secure each short piece to the bottom plate there is a fourth flat piece of metal lying longitudinally underneath, and somewhat shorter in length than the bottom plate, which has at each extreme end of it two integral upwardly-projecting pins or fins, lying in line side by side, one on each side of the center of its width, and extending each to the outer edge, each of which enters and passes through a separate hole for it through each of the two thicknesses of the short piece, which carries the buckle, (the two holes for each pin or fin being coincident,) and then enters a separate hole for it in the bottom plate, and is intended to be bent over and down, and clinched inside the shell against the upper surface of the bottom plate, there thus being four of such pins or fins, two for each short buckle piece. There is in the bottom plate for each pin or fin, another hole, so placed that when the pin or fin is bent over its end may go through such hole, and so leave a smoother clinch inside the shell. When the pins or fins are in place, and clinched, the buckles are held firmly, and the structures become a unit. Defendant's Exhibit No. 4 differs from complainants' exhibit

No. 3 only in two respects. There is in it, instead of the two buckle plates, a continuous plate of a single thickness, carrying a buckle at each end of it, the metal at each end being bent into two thicknesses, and there are no extra holes in the bottom plate to receive the ends of the pins or fins after they are clinched. In all other respects the two structures are alike.

The structure of the Saladee device is such that the pivoting of the buckle in the groove is effected by pivoting in the groove the back bar of the buckle, the back bar having on it a short lever, and the rear end of the spring pressing against the lever so as to keep the back bar snugly in the groove and prevent its escaping therefrom while it turns in it. This method of pivoting the buckle to the tongue is made a peculiar feature in the original patent, and is specially covered by the third claim of that patent. But for the action of the spring on the lever of the back bar of the buckle, there would be no pivoting of the back bar in the groove and no pivoting of the buckle to the tongue. Take away the spring and the whole structure would be inoperative; for not only would such pivoting disappear, but the stud would not take into its hole. Nothing different results from the language of the reissue. The structure is not and cannot be altered. The meaning of the language of claim 4 of the reissue in saying that the combination is "with the buckle frame, which is pivoted to said plate substantially as set forth," is that the buckle frame is pivoted to the plate by means of the spring, or what is in law and in fact a mechanical equivalent for the spring. In view of the patent granted to Frank Douglas, July 14, 1863, the pivoting of the buckle in the defendant's structures cannot be regarded as being effected by the same means or equivalent means as in the Saladee structure. In Douglas there are a plate, a loop on the plate, fastening pins on the plate, and a buckle frame which is pivoted to the plate. In combination all the features are found in Douglas which are found in Saladee. Not that the Douglas structure anticipates claim 4 of the Saladee reissue properly construed. But it limits its construction, so that the defendant's structures do not fall within it. The pivoting in the Douglas structure is effected by having the leather strap confine the bar in the groove. It is true that it requires the metal and the leather combined together to make the pivoting in Douglas, and that in the Saladee structure and the defendant's structures there is pivoting by the metal alone without the leather; but this is of no importance in principle. No one of the three structures is of any use except as applied to articles of leather. More-

over, the Saladee structure is a buckle for harness solely, and it cannot be converted into the defendant's structures without destroying its peculiar arrangement of pivoting. The bill must be dismissed, with costs.